**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| Becky Kirk, Perry Ayoob, and Dawn Karzenoski, as representatives of a class of similarly situated persons, and on behalf of the CHS/Community Health Systems, Inc. Retirement Savings Plan,<br><br>Plaintiffs,<br>v.<br><br>Retirement Committee of CHS/Community Health Systems, Inc., CHS/Community Health Systems, Inc., John and Jane Does 1-20, Principal Life Insurance Company, Principal Management Corporation, and Principal Global Investors, LLC,<br><br>Defendants. | Case No. 3:19-cv-00689<br><br>Judge William L. Campbell, Jr.<br><br>Magistrate Judge Barbara D. Holmes |

<u>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF PARTIAL CLASS ACTION SETTLEMENT**</u>

i

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

BACKGROUND ..................................................................................................................2

I.   PROCEDURAL HISTORY ..........................................................................................2

    A.  Pleadings and Court Proceedings...........................................................................2

    B.  Discovery, Mediation, and Settlement...................................................................3

II.  OVERVIEW OF SETTLEMENT TERMS.......................................................................3

III. PRELIMINARY APPROVAL OF SETTLEMENT ............................................................5

IV.  CLASS NOTICE AND REACTION TO SETTLEMENT ....................................................5

V.   INDEPENDENT FIDUCIARY REVIEW ........................................................................6

ARGUMENT .......................................................................................................................7

I.   STANDARD OF REVIEW ..........................................................................................7

II.  THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE.....................................8

    A.  The Settlement Provides a Significant Recovery and a Reasonable and Equitable Plan of Allocation .................................................................................................8

    B.  Continued Litigation Would Have Entailed Significant Risk..................................10

    C.  ERISA Class Cases Are Complex, Expensive, and Often Lengthy ...........................12

    D.  The Settlement Is the Product of Arm's Length Negotiations Conducted After Adequate Discovery and Adversarial Motion Practice................................................13

    E.  The Settlement Has Received Unanimous Approval from Class Counsel, the Class Representatives, the Class Members, and the Independent Fiduciary.........................14

    F.  The Settlement Serves the Public Interest .................................................................16

III. THE CLASS NOTICE WAS REASONABLE..................................................................17

IV.  THE COURT SHOULD REAFFIRM ITS CERTIFICATION OF THE SETTLEMENT CLASS..............18

V.   THE COURT SHOULD ENTER THE BAR ORDER ........................................................19

CONCLUSION ........................................................................................................................19

## TABLE OF AUTHORTIES

<u>**Cases**</u>

*Abbott v. Lockheed Martin Corp.*,
  2015 WL 4398475 (S.D. Ill. July 17, 2015) ....................................................................13

*Andrus v. N.Y. Life Ins. Co.*,
  No. 16-5698, ECF No. 66-1 (S.D.N.Y. Feb. 14, 2017) .....................................................10

*Andrus v. N.Y. Life Ins. Co.*,
  No. 16-5698, ECF No. 84 (S.D.N.Y. June 15, 2017) .........................................................10

*Ball v. Kasich*,
  2020 WL 1969289 (S.D. Ohio Apr. 24, 2020) .............................................................14, 15

*Barnes v. Winking Lizard, Inc.*,
  2019 WL 1614822 (N.D. Ohio Mar. 26, 2019) ..................................................................17

*Braden v. Wal-Mart Stores, Inc.*,
  588 F.3d 585 (8th Cir. 2009) .............................................................................................16

*Brotherston v. Putnam Invs., LLC*,
  907 F.3d 17 (1st Cir. 2018) ................................................................................................12

*Brotherston v. Putnam Invs., LLC*,
  No. 15-13825, ECF No. 220 (D. Mass. Apr. 29, 2020) .....................................................12

*Does 1-2 v. Deja Vu Servs., Inc.*,
  925 F.3d 886 (6th Cir. 2019) .............................................................................................16

*Dudenhoeffer v. Fifth Third Bancorp*,
  2016 WL 9343955 (S.D. Ohio July 11, 2016) ...................................................................19

*Fastener Dimensions, Inc. v. Mass. Mut. Life Ins. Co.*,
  2014 WL 5455473 (S.D.N.Y. Oct. 28, 2014) ....................................................................16

*Garland v. Memphis-Shelby Cty. Airport Auth.*,
  2011 WL 13090678 (W.D. Tenn. July 19, 2011) ..............................................................14

*Garner Properties & Mgmt., LLC v. City of Inkster*,
  333 F.R.D. 614 (E.D. Mich. 2020) ....................................................................................14

*Gokare v. Fed. Express Corp.*,
  2013 WL 12094870 (W.D. Tenn. Nov. 22, 2013) .........................................................14, 15

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) ...............................................................................13

*In re Se. Milk Antitrust Litig.*,
  2012 WL 2236692 (E.D. Tenn. June 15, 2012)......................................................2, 16

*In re Polyurethane Foam Antitrust Litigation*,
  2015 WL 1639269 (N.D. Ohio Feb. 26, 2015)...............................................................9

*In re Regions Morgan Keegan Sec.*,
  2013 WL 12110279 (W.D. Tenn. Aug. 6, 2013)...........................................................18

*In re Regions Morgan Keegan Sec., Derivative & ERISA Litig.*,
  2013 WL 12329512 (W.D. Tenn. Sept. 5, 2013).................................................9, 14, 15

*In re Regions Morgan Keegan Sec., Derivative & ERISA Litig.*,
  2014 WL 12808031 (W.D. Tenn. Dec. 24, 2014) .........................................................10

*In re Regions Morgan Keegan Sec., Derivative, & ERISA Litig.*,
  2016 WL 8290089 (W.D. Tenn. Aug. 2, 2016)............................................................8, 12

*In re Rite Aid Corp. Sec. Litig.*,
  146 F. Supp. 2d 706 (E.D. Pa. 2001) .............................................................................9

*Intl. Union, United Auto., Aerospace, and Agr. Implement Workers of Am. ("UAW") v. Gen. Motors Corp.*,
  497 F.3d 615 (6th Cir. 2007) .........................................................................................8

*Johnson v. Fujitsu Tech. & Business of America, Inc.*,
  2018 WL 2183253 (N.D. Cal. May 11, 2018).................................................................9

*Johnson v. W2007 Grace Acquisition I, Inc.*,
  2015 WL 12001269 (W.D. Tenn. Dec. 4, 2015) ...................................................9, 13, 14

*Karpik v. Huntington Bancshares Inc.*,
  2021 WL 757123 (S.D. Ohio Feb. 18, 2021)............................................................ *passim*

*Koenig v. USA Hockey*,
  2012 WL 12926023 (S.D. Ohio Jan. 10, 2012) ............................................................13

*Krueger v. Ameriprise*,
  2015 WL 4246879 (D. Minn. July 13, 2015) ................................................................13

*Kruger v. Novant Health, Inc.*,
  2016 WL 6769066 (M.D.N.C. Sept. 29, 2016)..............................................................13

*Martin v. Trott L., P.C.,*
2018 WL 4679626 (E.D. Mich. Sept. 28, 2018)................................................................17

*Michel v. WM Healthcare Sols., Inc.,*
2014 WL 497031 (S.D. Ohio Feb. 7, 2014)......................................................................17

*Moreno v. Deutsche Bank Americas Holding Corp.,*
2017 WL 3868803 (S.D.N.Y. Sept. 5, 2017).....................................................................15

*Moreno v. Deutsche Bank Americas Holding Corp.,*
No. 1:15-cv-09936, ECF No. 322-1 (S.D.N.Y. Aug. 14, 2018) ...................................9, 10

*Moreno v. Deutsche Bank Americas Holding Corp.,*
No. 1:15-cv-09936, ECF No. 347 (S.D.N.Y. Mar. 1, 2019)...............................................10

*People First of Tenn. v. Clover Bottom Developmental Ctr.,*
2015 WL 404077 (M.D. Tenn. Jan. 29, 2015)....................................................................7

*Phillips Petroleum Co. v. Shutts,*
472 U.S. 797 (1985)..........................................................................................................17

*Putnam Invs., LLC v. Brotherston,*
140 S. Ct. 911 (2020).........................................................................................................12

*Sacerdote v. New York Univ.,*
2018 WL 3629598 (S.D.N.Y. July 31, 2018) ....................................................................12

*Sacerdote v. New York Univ.,*
328 F. Supp. 3d 273 (S.D.N.Y. 2018)................................................................................12

*Shanechian v. Macy's,*
2013 WL 12178108 (S.D. Ohio June 25, 2013) ....................................................11, 13, 15

*Sims v. BB&T,*
No. 1:15-cv-00732, ECF No. 436-2 (M.D.N.C. Nov. 30, 2018) .......................................10

*Sims v. BB&T,*
2019 WL 1995314 (M.D.N.C. May 6, 2019) ......................................................................9

*Sims v. BB&T,*
No. 1:15-cv-00732, ECF No. 452 (M.D.N.C. May 6, 2019)..............................................10

*Tibble v. Edison Int'l,*
2017 WL 3523737 (C.D. Cal. Aug. 16, 2017)....................................................................13

*Todd v. Retail Concepts, Inc.*,
     2008 WL 3981593 (M.D. Tenn. Aug. 22, 2008) ...............................................................10

*Tussey v. ABB Inc.*,
     2017 WL 6343803 (W.D. Mo. Dec. 12, 2017) ...................................................................13

*Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*,
     No. 8:15-cv-01614, ECF No. 185 (C.D. Cal. July 30, 2018) .............................................9

*Wildman v. Am. Century Servs., LLC*,
     362 F. Supp. 3d 685 (W.D. Mo. 2019) .............................................................................12

*Wright v. Premier Courier, Inc.*,
     2018 WL 3966253 (S.D. Ohio Aug. 17, 2018)..................................................................16

## Statutes, Rules and Regulations

Prohibited Transaction Exemption 2003-39,
     68 Fed. Reg. 75632, as amended, 75 Fed. Reg. 33830.........................................................6

Fed. R. Civ. P. 23(c)(2)(B) ...............................................................................................17

Fed. R. Civ. P. 23(e)(2).......................................................................................................7

## Other Authorities

Fed. R. Civ. P. 23(e) advisory committee note (2018) ......................................................8

Restatement (Third) of Trusts § 100 cmt. b(1) ................................................................12

**INTRODUCTION**

On December 8, 2020, this Court preliminarily approved the Settling Parties' partial Class Action Settlement Agreement,[1] which resolves Plaintiffs' claims against the Retirement Committee of CHS/Community Health Systems, Inc. and CHS/Community Health Systems, Inc. (together, the "CHS/ Defendants" or "the Settling Defendants") concerning their management of the CHS/Community Health Systems, Inc. Retirement Savings Plan ("Plan"). [2] *ECF No. 101*. The Court found on a preliminary basis that "the Settlement Agreement is fair, reasonable, and adequate, and within the range of possible approval" and approved the distribution of Class Notices to the Settlement Class as specified in the Settlement Agreement. *Id. ¶¶ 2, 7*.

This Court should now grant final approval of the Settlement. As discussed below, all of the criteria for final approval are satisfied, and events following this Court's Preliminary Approval Order confirm that the Court's earlier analysis was correct. First, an Independent Fiduciary reviewed the Settlement and confirmed that the "terms, including the scope of the release of claims, the amount of cash received by the Plan and the amount of any attorneys' fee award or any other sums to be paid from the recovery, are reasonable in light of the Plan's likelihood of full recovery, the risks and costs of litigation, and the value of claims forgone." *Declaration of Kai Richter in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement ("Third Richter Decl.") Ex. A*. Second, the Class Notice was sent to more than 210,000 class members, and none of the Class Members objected to the Settlement (and the deadline to file any objections has passed). *Id. ¶ 5*. "The lack of objections by class members in relation to the size of the class also

---

[1] Unless otherwise specified, all capitalized terms have the meaning assigned to them in Article 1 of the Parties' Settlement Agreement, which appears on the docket at ECF No. 100-03.

[2] Plaintiffs' claims against Principal Life Insurance Company, Principal Management Corporation, and Principal Global Investors, LLC (the "Principal Defendants") are not released by the Settlement, and will continue to proceed.

highlights the fairness of the settlement[] to unnamed class members and supports approval of the settlement[]." *In re Se. Milk Antitrust Litig.*, 2012 WL 2236692, at *4 (E.D. Tenn. June 15, 2012). Accordingly, Plaintiffs respectfully request that the Court grant their motion for final approval of the partial Settlement.

## BACKGROUND

I.      **PROCEDURAL HISTORY**[3]

    A.      **Pleadings and Court Proceedings**

Plaintiffs Becky Kirk, Perry Ayoob, and Dawn Karzenoski filed this Action on August 8, 2019, alleging that the CHS/ Defendants and Principal Defendants breached their fiduciary duties of prudence and loyalty under ERISA by selecting and retaining certain investment options for the Plan affiliated with the Principal Defendants. *See ECF No. 1*. Plaintiffs pled that the CHS/ Defendants imprudently retained three Principal-affiliated index funds as standalone investment options in the Plan that Plaintiffs alleged to be excessively expensive and poorly performing compared to available alternatives. *Id. ¶¶ 68-82*. Plaintiffs also alleged that the Principal Defendants breached their fiduciary duties as the investment manager of certain target-date separate accounts ("TDSAs") in the Plan by selecting Principal-affiliated index funds and certain other Principal-affiliated investments as underlying investments for the TDSAs. *See id. ¶¶ 83-99*. Finally, Plaintiffs asserted a derivative claim that the CHS/ Defendants failed to adequately monitor the Principal Defendants in their management of the Plan's TDSAs. *See id. ¶ 132*. The CHS/ Defendants and Principal Defendants both moved to dismiss Plaintiffs' Complaint. *ECF Nos. 49, 51*. Those motions remained pending at the time the Court stayed the litigation pending

---

[3] The procedural history of the litigation was previously recounted in Plaintiffs' briefing in support of their motion for preliminary approval of the Settlement (*ECF No. 100*) and their pending motion for settlement administrative expenses (*ECF No. 103*). For ease of reference, Plaintiffs have recounted that history here.

negotiation of the present partial Settlement. The CHS/ Defendants deny all of the claims made in the Complaint and contend that they have no liability in this Action.

### B.     Discovery, Mediation, and Settlement

Prior to reaching the present partial Settlement, the Parties engaged in extensive discovery. The CHS/ Defendants produced more than 240,000 pages of documents, the Principal Defendants produced more than 84,000 pages of documents, and the Class Representatives produced more than 2,800 pages. *Declaration of Kai Richter in Support of Motion for Preliminary Approval, ECF No. 100-02 ("First Richter Decl.") ¶ 10.* Plaintiffs also subpoenaed two third parties and received over 200 pages of documents in response. *Id. ¶ 11.*[4]

As required by the Initial Case Management Order entered in this action (*ECF No. 58 ¶ F*), Plaintiffs made a demand on the CHS/ Defendants to settle this matter on June 24, 2020. *First Richter Decl. ¶ 12.* Settlement discussions continued, and the CHS/ Defendants and Plaintiffs eventually reached a settlement, the terms of which are memorialized in the Settlement Agreement that is the subject of this motion.

## II.     OVERVIEW OF SETTLEMENT TERMS

Under the Settlement, the CHS/ Defendants will contribute a Settlement Amount of $580,000 to a common settlement fund ("Settlement Fund"). *Settlement Agreement ¶¶ 1.25, 8.1.2.* Subject to any allowable deductions for Administrative Expenses, the Settlement Fund will be allocated to Settlement Class Members in proportion to their investment in the standalone Principal index funds in the Plan during the Class Period. *Id. ¶¶ 8.3.2-8.3.3.* Settlement Class members who invested in the TDSAs will preserve their claim against the Principal Defendants relating to the

---

[4] While the Parties were engaged in settlement discussions, Plaintiffs served a notice of deposition for a witness affiliated with CHS/Community Health Systems, Inc., to be conducted July 9, 2020. *See ECF No. 91 ¶ 4.* That deposition was postponed and was in the process of being rescheduled at the time the Settling Parties reached a settlement-in-principle. *Id.*

TDSAs (which is *not* subject to a judgment reduction based on this Settlement), but will not be separately compensated by the CHS/ Defendants based on their investment in the TDSAs to avoid a double recovery.[5] Instead, CHS/Community Health Systems, Inc. has agreed to provide certain further discovery related to the ongoing claim against the Principal Defendants relating to the management of the TDSAs. *Id. ¶ 9.1.*

Eligible Current Participants' accounts in the Plan will be automatically credited with their share of the Settlement Fund. *Settlement Agreement ¶ 8.4.* Eligible Former Participants, who do not have an account in the Plan, will receive their distributions by check. *Id. ¶ 8.5.*[6] Any checks that remain uncashed after the distribution of funds will revert to the Qualified Settlement Fund and will be paid to the Plan for the purpose of defraying administrative expenses. *Id. ¶ 8.8.*

As an additional benefit under the Settlement, the CHS/ Defendants have agreed to pay $127,642.47 toward settlement administration expenses, representing the portion of the administrative expenses associated with Settlement Class members who invested only in the TDSAs. *Id. ¶ 8.2.2.1.* The only administrative expenses that Plaintiffs have requested to be paid out of the Settlement Fund are those expenses associated with Settlement Class Members who invested in the standalone accounts and are eligible for a distribution. *See Memo in Support of Pls' Motion for Approval of Settlement Administrative Expenses (ECF No. 103) at 3*. There will be no other deductions from the Settlement Fund (other than tax withholdings). *Id.* Class Counsel have not requested any attorneys' fees or litigation costs in connection with the Settlement. *Id.*

---

[5] The Settlement Agreement does not resolve, and specifically excludes, Plaintiffs' ongoing claims against the Principal Defendants related to their management of the TDSAs in the Plan. *Settlement Agreement ¶ 4.5.* Moreover, any judgment obtained against the Principal Defendants would not be subject to a judgment reduction based on this Settlement. *Id. ¶ 3.3.4.*

[6] To minimize Administrative Costs, disbursements to Former Participants will be subject to a $5 *de minimis* threshold. *Id. ¶ 8.3.3.* Any funds that do not meet this threshold will be reallocated among eligible Settlement Class members prior to distribution.

In exchange for this relief, the Settlement Class will release the CHS/ Defendants and affiliated persons and entities (the "Settling Defendants' Releasees" as defined in the Settlement) from "any and all actual or potential Claims related to the Disputed Investments that were brought or could have been brought as of the date of the Settlement Agreement by any Settlement Class Member against the Settling Defendants' Releasees . . . ." *Settlement Agreement ¶ 1.37.* As noted above, claims against the Principal Defendants are not released. *Id. ¶ 4.5.*

## III.     PRELIMINARY APPROVAL OF SETTLEMENT

Plaintiffs filed a motion seeking preliminary approval of the Settlement on December 4, 2020. *ECF No. 99.* The Court granted the motion for preliminary approval on December 8, 2020. *ECF No. 101.* In its Order, the Court preliminarily certified the Settlement Class for Settlement purposes and found that the terms of the Settlement were sufficiently fair, reasonable, and adequate to warrant sending notice of the proposed settlement to the Settlement Class. *Id. ¶¶ 2, 7.* In addition, the Court appointed Analytics Consulting, LLC ("Analytics") to serve as the Settlement Administrator, distribute the Class Notices, and carry out the other administrative duties specified by the Settlement Agreement. *Id. ¶ 6.*

## IV.     CLASS NOTICE AND REACTION TO SETTLEMENT

Pursuant to the Court's Order preliminarily approving the Settlement, Analytics mailed the approved Class Notice to each of the Settlement Class Members identified by the Plan's recordkeeper. *See Declaration of Jeff Mitchell ("Mitchell Decl.") ¶¶ 7-9.*[7] Prior to sending these Notices, Analytics cross-referenced the addresses on the class list with the United States Postal Service National Change of Address ("NCOA") database. *Id. ¶ 8.* In the event that any Notices were returned, Analytics re-mailed the Notice to any forwarding address that was provided, and

---

[7] Defendants also caused Analytics to send the required CAFA notices to federal and state authorities on December 14, 2020. *See Mitchell Decl. ¶ 6.*

performed a skip trace in an attempt to ascertain a valid address for the class member in the absence of a forwarding address. *Id. ¶¶ 10-11*. As a result, the notice program was very effective. Out of 213,886 Notices that were mailed, only approximately 1.36% were ultimately undeliverable despite these efforts. *Id. ¶ 12*.

In the event that any class members desired further information, Analytics established a settlement website at www.chs401ksettlement.com. *Id. ¶ 13*. Among other things, the settlement website included: (1) a "Frequently Asked Questions" page containing a clear summary of essential case information; (2) a "Home" page and "Important Dates" page, each containing clear notice of applicable deadlines; (3) a "Court Documents" page, which includes case and settlement documents for download (including the Class Action Complaint, Class Notice, Settlement Agreement, Preliminary Approval Order, and Plaintiffs' Motion for Administrative Expenses and related papers; and (4) email, phone, and U.S. mail contact information for Analytics. *Id.* In addition, Analytics created and maintained a toll-free telephone support line (1-833-956-2057) as a resource for Class Members seeking information about the Settlement. *Id. ¶ 14*. This telephone number was referenced in the Notice, and also appears on the settlement website. *Id.*

The deadline to file objections to the Settlement was March 22, 2021. *See ECF No. 101 ¶¶ 8*. That deadline has now passed, and there have been no objections to the Settlement. *See Third Richter Decl. ¶ 5*; *Mitchell Decl. ¶ 15*.

V.    **INDEPENDENT FIDUCIARY REVIEW**

Pursuant to Section 3.4 of the Settlement Agreement and applicable guidance from the Department of Labor,[8] the Settlement was reviewed on behalf of the Plan by an Independent Fiduciary (Fiduciary Counselors) following the Court's preliminary approval order. *See Third*

---

[8] *See* Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75632, as amended, 75 Fed. Reg. 33830.

*Richter Decl. Ex. A*. After reviewing the Settlement and other case documents, interviewing counsel for each of the Settling Parties, and conducting other due diligence, the Independent Fiduciary concluded that: (1) "The Settlement terms, including the scope of the release of claims, the amount of cash received by the Plan and … sums to be paid from the recovery, are reasonable in light of the Plan's likelihood of full recovery, the risks and costs of litigation, and the value of claims forgone"; (2) "The terms and conditions of the transaction are no less favorable to the Plan than comparable arm's-length terms and conditions that would have been agreed to by unrelated parties under similar circumstances"; and, (3) "The transaction is not part of an agreement, arrangement or understanding designed to benefit a party in interest." *Id. at 1*. Accordingly, the Independent Fiduciary "approve[d] and authorize[d] the Settlement on behalf of the Plan in accordance with [Prohibited Transaction Exemption] 2003-39." *Id.*

## ARGUMENT

### I.    STANDARD OF REVIEW

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any settlement agreement that will bind absent class members. Fed. R. Civ. P. 23(e)(2). The standard for approval is whether the settlement is "fair, reasonable, and adequate." *People First of Tenn. v. Clover Bottom Developmental Ctr.*, 2015 WL 404077, at \*2 (M.D. Tenn. Jan. 29, 2015) (quoting Fed. R. Civ. P. 23(e)(2)).

Federal Rule of Civil Procedure 23(e)(2) identifies four factors considered in making such determination: (1) adequacy of representation, (2) existence of arm's-length negotiations, (3) adequacy of relief, and (4) equitableness of treatment of class members. Fed. R. Civ. P. 23(e)(2). These factors overlap significantly with the more detailed list of factors that courts in this Circuit have typically used for purposes of reviewing the fairness of a proposed class action settlement (the "*UAW* factors"): (1) the risk of fraud or collusion; (2) the complexity, expense and likely

7

duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. *See In re Regions Morgan Keegan Sec., Derivative, & ERISA Litig.*, 2016 WL 8290089, at *2 (W.D. Tenn. Aug. 2, 2016) (citing *Intl. Union, United Auto., Aerospace, and Agr. Implement Workers of Am. ("UAW") v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)). The purpose of the Rule 23(e)(2) factors is to "focus the court . . . on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e) advisory committee note (2018).

As discussed below, both the Rule 23(e)(2) factors and the *UAW* factors overwhelmingly favor approval of the Settlement in this case.  Accordingly, Plaintiffs respectfully request that the Court grant final approval of the Settlement.[9]

## II.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A.    The Settlement Provides a Significant Recovery and a Reasonable and Equitable Plan of Allocation.

As the Independent Fiduciary noted in its Report, the recovery provided by the Settlement "reasonable in light of the Plans' likelihood of full recovery, the risks and costs of litigation, and the value of claims foregone." *Third Richter Decl. Ex. A at 1*. The monetary relief constitutes approximately 50% of the total damages that Plaintiffs calculated were associated with the standalone Principal index funds selected by the CHS/ Defendants for the Plan, and nearly 94% of the portion of fees for those funds that Plaintiffs alleged to be excessive. *First Richter Decl. ¶ 5*. This compares favorably to other class action settlements. *See, e.g., Karpik v. Huntington Bancshares Inc.*, 2021 WL 757123, at *8 (S.D. Ohio Feb. 18, 2021) (approving ERISA 401(k)

---

[9] The Sixth Circuit has recognized that "federal policy favor[s] settlement of class actions'" such as this. *UAW*, 497 F.3d at 632.

settlement that represented approximately 30% of estimated damages); *Sims v. BB&T Corp.*, 2019 WL 1995314, at *5 (M.D.N.C. May 6, 2019) (approving ERISA 401(k) settlement that represented 19% of estimated damages); *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, No. 8:15-cv-01614, ECF No. 185 (C.D. Cal. July 30, 2018) (approving ERISA 401(k) settlement that represented approximately one-quarter of estimated losses); *Johnson v. Fujitsu Tech. & Business of America, Inc.*, 2018 WL 2183253, at *6-7 (N.D. Cal. May 11, 2018) (approving ERISA 401(k) settlement that represented "just under 10% of the Plaintiffs' most aggressive 'all in' measure of damages"); *Johnson v. W2007 Grace Acquisition I, Inc.*, 2015 WL 12001269, at *8 (W.D. Tenn. Dec. 4, 2015) (finding settlement representing 25% of plaintiffs' maximum loss reasonable); *In re Polyurethane Foam Antitrust Litigation*, 2015 WL 1639269, at *5 (N.D. Ohio Feb. 26, 2015) ("A settlement figure that equates to roughly 18 percent of the best-case-scenario classwide [damages] is an impressive result in view of these possible trial outcomes."); *In re Regions Morgan Keegan Sec., Derivative & ERISA Litig.*, 2013 WL 12329512, at *3 (W.D. Tenn. Sept. 5, 2013) (approving ERISA settlement equal to approximately 16% of total damages); *see also In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (noting that since 1995, class action settlements have typically "recovered between 5.5% and 6.2% of the class members' estimated losses").

Moreover, the recovery will be distributed equitably to class members pursuant to a Plan of Allocation that is based on the claims that were asserted in the action. *See supra* at 4. The Independent Fiduciary also found "the Plan of Allocation to be reasonable[.]" *Third Richter Decl. Ex A at 6*. This Plan of Allocation is consistent with those approved in similar cases. *See, e.g., Moreno v. Deutsche Bank Americas Holding Corp.*, No. 1:15-cv-09936, ECF No. 322-1 at ¶ 6.4.1 (Aug. 14, 2018) (ERISA settlement allocating proceeds based on amount that class members

9

invested in the "Disputed Investments"); *id.*, ECF No. 347 (Mar. 1, 2019) (order granting final approval); *Sims v. BB&T*, No. 1:15-cv-00732, ECF No. 436-2, ¶ 6.4.2 (Nov. 30, 2018) (allocating funds in proportion to investment in at-issue proprietary funds); *id.,* ECF No. 452 (M.D.N.C. May 6, 2019) (order granting final approval). *Andrus v. N.Y. Life Ins. Co.*, No. 16-5698, ECF No. 66-1, at ¶ 6.4.1 (Feb. 14, 2017) (allocating funds in proportion to investment in at-issue index fund); *id*, ECF No. 84 (S.D.N.Y. June 15, 2017) (order granting final approval).

Although Settlement Class members will not receive distributions based on their investment in the TDSAs, their claim against the Principal Defendants relating to the TDSAs is preserved, *see Settlement Agreement, ¶ 4.5*, and the CHS/ Defendants have agreed to provide certain further discovery related to that claim, *id. ¶ 9.1*. A separate monetary recovery from the CHS/ Defendants on the same claim would create a potential double recovery.  As the Independent Fiduciary noted in its Report, the monitoring claim against the CHS/ Defendants relating to the TDSAs was a "derivative claim" that was "dependent on the claim against the Principal Defendants" and yielded no additional damages. *See Third Richter Decl. Ex. A at 7-8* ("Plaintiffs asserted a derivative claim that the CHS/ Defendants failed to adequately monitor the Principal Defendants in their management of the Plan's TDSAs. That claim was dependent on the claim against the Principal Defendants, did not add to potential damages related to the TDSAs, and was subject to defenses not available to the Principal Defendants.").

**B.    Continued Litigation Would Have Entailed Significant Risk**

In the absence of a Settlement, Plaintiffs would have faced significant litigation risk. *See In re Regions Morgan Keegan Sec., Derivative & ERISA Litig.*, 2014 WL 12808031, at \*3 (W.D. Tenn. Dec. 24, 2014) (noting the risks of continued litigation, including "further uncertainty given the evolving case law in ERISA cases."); *Todd v. Retail Concepts, Inc.*, 2008 WL 3981593, at \*4 (M.D. Tenn. Aug. 22, 2008) ("It is also pertinent for the Court to consider the risk, expense and

10

delay of further litigation."); *Shanechian v. Macy's,* 2013 WL 12178108, at \*4 (S.D. Ohio June 25, 2013) (noting difficulty of proving both liability and damages at trial even where plaintiffs prevailed on previous motion to dismiss and class certification rulings).

In their motion to dismiss (which remained pending at the time the Court entered the stay of litigation pending settlement), the CHS/ Defendants argued that Plaintiffs' allegations fail to state a plausible claim for relief against the CHS/ Defendants and must be dismissed because: (a) Plaintiffs merely allege that the standalone Principal index funds in the Plan were not the cheapest and best performing funds available on the market and fail to allege any affiliation between the CHS/ Defendants and Principal, thus nothing in the Complaint gives rise to an inference of imprudence or disloyalty with respect to the retention of the standalone Principal index funds in the Plan (*ECF No. 50 at 8-17*); (b) Plaintiffs do not allege that the selection, monitoring, performance, or fees of the challenged TDSAs themselves was deficient (*id. at 7*); (c) the duty to monitor the TDSAs' underlying investments rests with Principal as the TDSAs' ERISA § 3(38) investment manager (*id. at 17-18*) and Plaintiffs do not allege any "red flags" that would have triggered a need to question Principal's monitoring of the investments; and (d) even if additional monitoring of the TDSA was merited, Plaintiffs' allegations fail to state a claim that the TDSAs' underlying investments were imprudent or disloyal options for the Plan (*see ECF No. 52 at 17-24*). The CHS/ Defendants also argued that Plaintiffs lack Article III standing to assert claims related to Standalone Accounts because they did not invest in those accounts and thus did not suffer an injury-in-fact (*id. at 24-25*). While Plaintiffs believe their counterarguments to be well supported under the law, it was not clear at the time of settlement how the Court would rule.

If the Court denied the CHS/ Defendants' motion to dismiss (and any subsequent summary judgment motion), Plaintiffs still would have faced substantial risk at trial, as illustrated by two

11

recent trial judgments in favor of the defendants in ERISA breach of fiduciary duty cases involving defined contribution plans. *See Wildman v. Am. Century Servs., LLC*, 362 F. Supp. 3d 685 (W.D. Mo. 2019); *Sacerdote v. New York Univ.*, 2018 WL 3629598 (S.D.N.Y. July 31, 2018). Moreover, even if Plaintiffs established a fiduciary breach, it is "difficult" to measure damages in cases alleging imprudent or otherwise improper investments. *See* Restatement (Third) of Trusts § 100 cmt. b(1).  Thus, significant issues would have remained regarding proof of loss. *See Sacerdote v. New York Univ.*, 328 F. Supp. 3d 273 at 280 (S.D.N.Y. 2018) (finding that "while there were deficiencies in the Committee's [fiduciary] processes—including that several members displayed a concerning lack of knowledge relevant to the Committee's mandate—plaintiffs have not proven that … the Plans suffered losses as a result.").[10]

## C.    ERISA Class Cases Are Complex, Expensive, and Often Lengthy

Regardless of the eventual outcome, continuing the litigation would have resulted in complex and costly additional proceedings, which would have significantly delayed any relief to class members. These considerations also support approval of the Settlement.

"[M]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them." *In re Regions Morgan Keegan Sec., Derivative, & ERISA Litig.*, 2016 WL 8290089, at *4 (quoting *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001)). "The complexity inherent in class actions is amplified in ERISA class actions." *Karpik*, 2021 WL 757123, at *4. It is well recognized that "ERISA is a

---

[10] As a case in point, Class Counsel recently suffered an adverse judgment regarding a loss issue midtrial in an ERISA case against Putnam Investments, later appealed to the First Circuit and prevailed on the same issue, and then settled the case before the trial was completed (following over four years of litigation). *See Brotherston v. Putnam Invs., LLC*, 907 F.3d 17 (1st Cir. 2018) (partly vacating judgment against Plaintiffs); *Putnam Invs., LLC v. Brotherston*, 140 S. Ct. 911 (2020) (denying defendants' petition for certiorari); *Brotherston v. Putnam Invs., LLC*, No. 15-13825, ECF No. 220 (D. Mass. Apr. 29, 2020) (approving plaintiffs' motion for preliminary approval).

complex field that involves difficult and novel legal theories and often leads to lengthy litigation."

*Krueger v. Ameriprise*, 2015 WL 4246879, at *1 (D. Minn. July 13, 2015); *see also In re Marsh ERISA Litig.*, 265 F.R.D. 128, 138 (S.D.N.Y. 2010) ("Many courts have recognized the complexity of ERISA breach of fiduciary duty actions."). Indeed, it is not unusual for these cases to extend for a decade or longer before final resolution. *See Shanechian,* 2013 WL 12178108, at *5 (discussing how ERISA case that had lasted for six years could last for six more years absent a settlement); *Tussey v. ABB Inc.,* 2017 WL 6343803, at *3 (W.D. Mo. Dec. 12, 2017) (requesting proposed findings more than ten years after suit was filed on December 29, 2006); *Tibble v. Edison Int'l*, 2017 WL 3523737, at *15 (C.D. Cal. Aug. 16, 2017) (outlining remaining issues ten years after suit was filed on August 16, 2007); *Abbott v. Lockheed Martin Corp.*, 2015 WL 4398475, at *4 (S.D. Ill. July 17, 2015) (noting that the case had originally been filed on September 11, 2006).

Given the risks, cost, and delay of further litigation, it was reasonable and appropriate for Plaintiffs to reach a settlement on the terms that were negotiated. *See Kruger v. Novant Health, Inc.*, 2016 WL 6769066, at *5 (M.D.N.C. Sept. 29, 2016) (stating that settlement of a 401(k) class action "benefits the employees and retirees in multiple ways"). One of the chief advantages of the Settlement in this case is that it provides immediate and guaranteed relief to the Class.

**D.    The Settlement Is the Product of Arm's Length Negotiations Conducted After Adequate Discovery and Adversarial Motion Practice**

"Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *W2007 Grace Acquisition I*, 2015 WL 12001269, at *5. Accordingly, courts consistently approve class action settlements reached through arms-length negotiations after meaningful discovery. *See id.* at *6 ("Discovery provides a level playing field for negotiations and ensures that the negotiations are informed rather than the product of uneducated guesswork."); *Koenig v. USA Hockey*, 2012 WL 12926023, at *4 (S.D. Ohio Jan. 10, 2012) (documents provided

13

to plaintiffs in advance of settlement provided a "clear picture of the strengths and weaknesses of this case and the sufficiency of the legal and factual defenses the Defendants would raise."); *Garner Properties & Mgmt., LLC v. City of Inkster*, 333 F.R.D. 614, 627 (E.D. Mich. 2020).

That is precisely the situation presented here. At all times, the parties negotiated at arm's length. *See First Richter Decl. ¶ 13*. Moreover, the parties engaged in extensive discovery before engaging in settlement discussions. *Id. ¶ 9.* This gave the parties a clear view of the facts and law, and the strengths and weaknesses of their case. For this reason as well, the Court should grant final approval of the Settlement. *See Ball v. Kasich*, 2020 WL 1969289, at *6 (S.D. Ohio Apr. 24, 2020) (citing numerous cases indicating that arms-length negotiations between well-informed parties demonstrates lack of fraud or collusion).

Courts in this district have approved settlements at similar or earlier stages of proceedings. *See W2007 Grace Acquisition I*, 2015 WL 12001269, at *3 (approving settlement reached while motion to dismiss was pending); *Gokare v. Fed. Express Corp.*, 2013 WL 12094870, at *4 (W.D. Tenn. Nov. 22, 2013) (same); *In re Regions Morgan Keegan Sec., Derivative & ERISA Litig.*, 2013 WL 12329512, at *4 (granting final approval of settlement reached while motion to dismiss was pending, although plaintiffs admitted they "do not have many of the important documents necessary to prove their claims."); *Garland v. Memphis-Shelby Cty. Airport Auth.*, 2011 WL 13090678, at *3 (W.D. Tenn. July 19, 2011) (granting final approval to settlement reached while motion to dismiss was pending, prior to formal discovery). Based on the extensive record that was developed and the thorough legal briefing on the motions to dismiss, the parties had more than sufficient information to evaluate settlement.

###### E.     The Settlement Has Received Unanimous Approval from Class Counsel, the Class Representatives, the Class Members, and the Independent Fiduciary

The positive response that the Settlement has received from numerous stakeholders,

including Class Counsel, the Class Representatives, absent class members, and the Independent Fiduciary, further demonstrates that the terms of the Settlement are fair and reasonable.

"As the Sixth Circuit has stated [in the context of approving class action settlements] ... 'The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs.'" *Gokare v. Fed. Express Corp.*, 2013 WL 12094870, at *6 (W.D. Tenn. Nov. 22, 2013) (quoting *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir.1983)). Here, Class Counsel is experienced in similar ERISA class actions,[11] and has concluded that the settlement is fair, reasonable, and adequate. *See Third Richter Decl. ¶ 2*; *First Richter Decl. ¶ 7*. This supports approval of the Settlement. *See Shanechian*, 2013 WL 12178108, at *5 (counsel's experience in similar ERISA class actions and recommendation to approve ERISA settlement supports final approval). Moreover, the Class Representatives previously submitted declarations in support of the Settlement. *See ECF Nos. 100-05 to 100-07*. Their support also favors approval. *See Ball*, 2020 WL 1969289, at *8. Both Class Counsel and the Class Representatives have been determined to be adequate to represent the class. *See ECF No. 101 at ¶¶ 4-5.*

The reaction of the absent class members also has been positive. As noted above, there have been no objections to the Settlement from any of the class members who were sent a Class Notice. *See Third Richter Decl. ¶ 5*. "This creates the inference that all or most of the Class Members had no concerns about the proposed settlement" and "weighs strongly in favor of approving the settlement." *Karpik*, 2021 WL 757123, at *6; *see also In re Regions Morgan Keegan Sec., Derivative & ERISA Litig.*, 2013 WL 12329512, at *4.

---

[11] "Plaintiffs' counsel are experienced litigators who serve as class counsel in ERISA actions involving defined-contribution plans." *Moreno v. Deutsche Bank Americas Holding Corp.*, 2017 WL 3868803, at 11 (S.D.N.Y. Sept. 5, 2017); *see also First Richter Decl. ¶¶ 16-18* (setting forth extensive experience of Class Counsel in ERISA class action cases).

15

Finally, after completing the review required by Paragraph 3.4 of the Settlement Agreement and applicable guidance from the Department of Labor (*see supra* at 6), the Independent Fiduciary, acting on behalf of the Plan, approved the Settlement terms, including (1) "the scope of the release of claims [and] the amount of cash received by the Plan," *Third Richter Decl. Ex. A at 1*, the proposed Plan of Allocation, *id. at 5-6*, and the requested Administrative Expenses, *id. at 7.* This further supports approval of the Settlement. *See Karpik*, 2021 WL 757123, at *6.

### F.    The Settlement Serves the Public Interest.

Finally, settlement of a complex class action such as this serves the broader public interest. "Courts have held that there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources." *Does 1-2 v. Deja Vu Servs., Inc.*, 925 F.3d 886, 899 (6th Cir. 2019) (internal quotation marks and citations omitted). Consistent with this public interest rationale, the Settlement "end[s] potentially long and protracted litigation among these parties and frees the Court's valuable judicial resources." *In re Se. Milk Antitrust Litig.*, 2012 WL 2236692, at *4. Indeed, the public interest factor is particularly compelling here because of the nature of this ERISA action.[12]

---

[12] Actions such as this "confer[] broader public benefits, as 'the protection of retirement funds is a great public interest' and 'private attorneys general have a major role to play in ERISA litigation.'" *Karpik*, 2021 WL 757123, at *6; *see also Wright v. Premier Courier, Inc.*, 2018 WL 3966253, at *1 (S.D. Ohio Aug. 17, 2018) (noting that actions such as this "have a value to society more broadly…as private law enforcement regimes that free public sector resources") (quoting *Gascho v. Global Health Fitness Holdings, LLC*, 822 F.3d 269, 287 (6th Cir. 2016)). Specifically, "the protection of retirement funds is a great public interest" and "private attorneys general have a major role to play in ERISA litigation." *Fastener Dimensions, Inc. v. Mass. Mut. Life Ins. Co.*, 2014 WL 5455473, at *9 (S.D.N.Y. Oct. 28, 2014); *see also Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 597 n.8 (8th Cir. 2009) (noting that Secretary of Labor "depends in part on private litigation to ensure compliance with the statute"). Suits like this are one of the factors that have led to significantly lower fees for of 401(k) plan participants in recent years. *See 401(k) Fees Continue*

In the absence of a class action such as this, many Class Members would be unable to bring individual claims due to the complexity and expense of ERISA actions. Indeed, "[i]n filing this case, Plaintiff[s] and Class Counsel 'took on a difficult case that an individual Class Member would almost certainly never file on their own' and 'obtained recovery on a class-wide basis for an alleged injury that, but for this litigation, would almost certainly have gone uncompensated.'" *Barnes v. Winking Lizard, Inc.*, 2019 WL 1614822, at *4 (N.D. Ohio Mar. 26, 2019) (quoting *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 782 (N.D. Ohio 2010)).

## III.    THE CLASS NOTICE WAS REASONABLE

The class notice program also was reasonable and satisfied the requirements of Rule 23 and Due Process. The "best notice" practicable under the circumstances includes individual notice to all class members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B). That is precisely the type of notice that was provided here.

As noted above, the Settlement Administrator sent the Court-approved Class Notice to each of the class members via U.S. Mail. *See supra* at 5-6. This type of notice is presumptively reasonable. *See Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 812 (1985). Further, the record reflects that approximately 98.64% of the Class Notices were successfully delivered. *See Mitchell Decl. ¶ 12*. This confirms the effectiveness of the notice program. *See Martin v. Trott L., P.C.,* 2018 WL 4679626, at *8 (E.D. Mich. Sept. 28, 2018) (notice reaching 93% of class was "extraordinary" and "remarkable"); *Michel v. WM Healthcare Sols., Inc.*, 2014 WL 497031, at *4 (S.D. Ohio Feb. 7, 2014) (notice reaching 86.6% of class was reasonable).

The content of the Notices also was reasonable. The Notices included, among other things:

---

*To Drop*, FORBES (Aug. 20, 2015) (noting that fees have fallen "[i]n part in response to 401(k) fee litigation[.]"), available at https://www.forbes.com/sites/ashleaebeling/2015/08/20/401k-fees-continue-to-drop/#6b8caf21164f (last visited December 16, 2020).

17

(1) a summary of the lawsuit; (2) a clear definition of the Settlement Class; (3) a description of the material terms of the Settlement; (4) a disclosure of the release of claims; (5) instructions as to how to object to the Settlement and a date by which Settlement Class Members must object; (6) the date, time, and location of the Fairness Hearing; (7) contact information for the Settlement Administrator; and (8) information regarding Class Counsel and the fact that Class Counsel would request reimbursement of Settlement Administrative Expenses. *See Mitchell Decl. Ex. 1.* These Notices were previously approved by the Court, *see ECF No. 101 ¶ 7,* and "fairly apprise the prospective members of the class of the terms of the proposed settlement' so that class members may come to their own conclusions about whether the settlement serves their interests." *In re Regions Morgan Keegan Sec.*, 2013 WL 12110279, at *4 (W.D. Tenn. Aug. 6, 2013) (quoting *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 759 (6th Cir. 2013)). This is more than sufficient to meet the Rule 23 standard.

Notably, no Settlement Class Member has claimed that the Notices were deficient, and to the extent they had any questions, they could review the settlement website, call the toll-free telephone line, or contact the Settlement Administrator or Class Counsel.

## IV.    THE COURT SHOULD REAFFIRM ITS CERTIFICATION OF THE SETTLEMENT CLASS

In its Order preliminarily approving the partial Settlement, the Court preliminarily certified the following Settlement Class:

> All current and former participants in the Plan who had an account balance greater than $0.00 in the Disputed Investments at any point during the Class Period and their beneficiaries.

*ECF No. 101 ¶ 3.* In their memorandum of law in support of preliminary approval, Plaintiffs established that: (1) the class was sufficiently numerous; (2) Plaintiffs raised common issues in the Complaint; (3) Plaintiffs' claims are typical of other class members' claims; (4) Plaintiffs are adequate class representatives; (5) Class Counsel is experienced and competent; (6) class

certification is appropriate under Fed. R. Civ. P. 23(b)(1)(A) due to the risk of inconsistent adjudications; and (7) class certification is appropriate under Fed. R. Civ. P. 23(b)(1)(B) because any individual adjudication would be dispositive of the interests of other class members. *ECF No. 100 at 17-22*; *see also Dudenhoeffer v. Fifth Third Bancorp*, 2016 WL 9343955, at *2 (S.D. Ohio July 11, 2016) (finding ERISA 401(k) case a "paradigmatic example" of a 23(b)(1) class). Nothing has changed since the Court preliminarily certified the class for preliminary approval. Accordingly, the Court should reaffirm its approval of Settlement Class.

## V.    THE COURT SHOULD ENTER THE BAR ORDER

The Settlement Agreement calls for the entry of a Bar Order by the Court following the Fairness Hearing, prohibiting the Principal Defendants, Plaintiffs, and other third parties from asserting claims against the CHS/ Defendants and related entities for indemnity, contribution or other third-party claims arising from this Action, or any other Claims released in the Settlement Agreement. *Settlement Agreement ¶ 3.3.4(b)(viii).* As discussed in Plaintiffs' brief in support of their motion for preliminary approval of the partial Settlement, the Court may enter the bar order without holding an evidentiary hearing sometimes required for such orders because the Principal Defendants do not oppose entry of the Bar Order, and because courts in this Circuit have uniformly held that a right of contribution does not exist among ERISA co-fiduciaries. *See ECF No. 100 at 22-23.* As such, the Court should enter the Bar Order called for by the Settlement Agreement.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant final approval of the Settlement and enter the accompanying proposed order.

Dated:  March 29, 2021                    /s/ Kai Richter
                                          Kai Richter
                                          **NICHOLS KASTER, PLLP**
                                          Kai H. Richter, MN Bar No. 0296545*
                                          Paul J. Lukas, MN Bar No. 22084X*
                                          Carl F. Engstrom, MN Bar No. 0396298*
                                          Brock J. Specht, MN Bar No. 0388343*
                                          Jacob T. Schutz, MN Bar No. 0395648*
                                                  * admitted *pro hac vice*
                                          4700 IDS Center
                                          80 S 8th Street
                                          Minneapolis, MN 55402
                                          Telephone: 612-256-3200
                                          Facsimile: 612-338-4878
                                          krichter@nka.com
                                          lukas@nka.com
                                          cengstrom@nka.com
                                          bspecht@nka.com
                                          jschutz@nka.com

                                          **BARRETT JOHNSTON MARTIN &
                                          GARRISON, LLC**
                                          Jerry Martin, TN BPR No. 20193
                                          David Garrison TN BPR No. 24968
                                          Philips Plaza
                                          414 Union Street, Suite 900
                                          Nashville, TN  37219
                                          Telephone: (615) 244-2202
                                          Facsimile: (615) 252-3798
                                          jmartin@barrettjohnston.com

                                          ATTORNEYS FOR PLAINTIFFS

### CERTIFICATE OF SERVICE

I hereby certify that on March 29, 2021, a true and accurate copy of the foregoing *Plaintiffs'*

*Memorandum in Support of Motion for Final Approval of Partial Class Action Settlement*

electronically using the Court's CM/ECF system, which will send a notice of electronic filing to

the following:

| | |
|---|---|
| Howard Shapiro | Leslie Goff Sanders, Esq. |
| Stacey C.S. Cerrone | Daniel Crowell, Esq. |
| Lindsey Chopin | WEBB SANDERS PLLC |

20

JACKSON LEWIS P.C.
650 Poydras Street, Suite 1900
New Orleans, Louisiana 70130
Telephone: (504) 208-1755
Facsimile: (504) 208-1759
E-mail:
Howard.Shapiro@jacksonlewis.com
Stacey.Cerrone@jacksonlewis.com
Lindsey.Chopin@jacksonlewis.com

George H. Cate, III, BPR #12595
Jeffrey W. Sheehan, BPR #33534
BRADLEY ARANT BOULT CUMMINGS
LLP
1600 Division Street, Suite 700
P.O. Box 340025
Nashville, TN 37203
Telephone: 615-244-2582
gcate@bradley.com
jsheehan@bradley.com

611 Commerce Street, Suite 3102
Nashville, TN 37203
lsanders@webbsanderslaw.com
dcrowell@webbsanderslaw.com

Angel West, Esq.
Leslie Behaunek, Esq.
NYEMASTER GOODE, PC
700 Walnut Street, Suite 1600
Des Moines, IA 50309
aaw@nyemaster.com
lcbehaunek@nyemaster.com

Lars C. Golumbic, Esq.
Samuel I. Levin, Esq.
Kara P. Wheatley, Esq.
Elizabeth Woods, Esq.
Mark C. Nielsen, Esq.
GROOM LAW GROUP
1701 Pennsylvania Ave., NW, Suite 1200
Washington, DC 20006
lgolumbic@groom.com
slevin@groom.com
kwheatley@groom.com
ewoods@groom.com
mcn@groom.com

/s/ Kai Richter
Kai Richter

21