IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| BECKY KIRK, PERRY AYOOB, and DAWN KARZENOSKI, as representatives of a class of similarly situated persons, and on behalf of the CHS/Community Health Systems, Inc. Retirement Savings Plan, <br><br> Plaintiffs, <br><br> v. <br><br> PRINCIPAL LIFE INSURANCE COMPANY, PRINCIPAL MANAGEMENT CORPORATION, and PRINCIPAL GLOBAL INVESTORS LLC, <br><br> Defendants. | Case No. 4:21-cv-00134-SMR-SHL <br><br><br> ORDER ON DEFENDANTS' MOTION TO DISMISS |

Plaintiffs are former participants in a retirement plan ("Plan") sponsored by CHS/Community Health Systems, Inc ("CHS").[1] Defendants are Principal Life Insurance Company, Principal Global Investors, LLC, and Principal Management Corporation (collectively, "Principal" or "Defendants"). Plaintiffs allege Defendants invested the Plan's assets in proprietary investments offered by Principal, investments which underperformed and charged higher fees than comparable investments available in the marketplace.

Plaintiffs filed a Complaint alleging these actions constitute a breach of Defendants' fiduciary duties as required by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*. [ECF No. 1]. Defendants filed a Motion to Dismiss, alleging the

---

[1] The Complaint was initially filed in the United States District Court for the Middle District of Tennessee and CHS was named as a Defendant. CHS agreed to a settlement with Plaintiffs which was approved by the district court in Tennessee. [ECF No. 109]. Defendants filed an unopposed motion to transfer the case to this District, which was granted by the district court.

Complaint fails to state a claim. For the reasons discussed below, Defendants' Motion to Dismiss, [ECF No. 133], is GRANTED.

## I.   BACKGROUND[2]

The Plan is an employer-based defined contribution retirement plan which meets the requirements of 26 U.S.C. § 401(k), popularly known as "401(k) plans." [ECF No. 1 ¶ 20]. It covers "substantially all salaried employees of CHS," including former employees who have not withdrawn their funds despite leaving the employment of CHS. *Id.* ¶ 21. Plan participants can elect to defer a portion of their compensation to the Plan and CHS matches that amount up to a pre-determined percentage. *Id.* ¶ 22.

CHS and Principal negotiated the Plan, which is designed to offer participants a series of investments, referred to as target date funds ("TDFs"), that are tailored to specific retirement dates. [ECF No. 1 ¶ 8]. A TDF is a fund comprised of diversified investments which are adjusted to reduce risk as the chosen target date nears. *Id.* ¶¶ 8; 47. The target date options in TDFs are typically staggered by five to ten years, allowing participants to choose the fund corresponding to their expected retirement date, or when they anticipate they will begin to withdraw their funds. *Id*. ¶ 47. The Plan's TDFs are managed by Principal and, as of the end of 2017, consisted of eleven target date options from 2010 to 2060 and an option for already retired investors. *Id.* ¶¶ 83–84.

The TDFs are organized as Separate Accounts, which are pooled investments maintained by a bank or trust company and managed according to an investment management agreement.[3] *Id.*

---

[2] This section draws on the facts pled in the Complaint which are assumed to be true for the purposes of the Motion to Dismiss plus any documents "necessarily embraced by the pleadings." *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

[3] Separate Accounts are available to qualified retirement plans and generally hold a wide range of investments including stocks, bonds, exchange-traded funds, and other investments. [ECF No. 1 ¶ 42]. Separate Accounts are utilized primarily because "[s]tate insurance law and ERISA

¶ 41. The Separate Accounts use a "fund-of-funds" structure, which helps achieve asset allocation and diversification goals by investing assets in other pooled investment products such as collective investment trusts, annuity subaccounts, mutual funds, and exchange-traded funds. *Id*. ¶ 48; 86. Principal structured the Separate Accounts by initially determining which asset classes would be included. *Id.* ¶ 87. It then determined the asset allocation for each asset class over the lifespan of the investment, known as its "glide path." *Id.* ¶¶ 47; 87. Finally, Principal assembled the investment portfolio by selecting the underlying investment options. *Id.* ¶ 87.

Among the underlying investments in the Separate Accounts were index funds, which are investments that aim to track major stock indices, such as the Standard & Poor's 500 Index and Bloomberg Barclays Aggregate Bond Index. *Id.* ¶ 89. By selecting proprietary investments, Plaintiffs allege that Principal did not consider alternative index funds available in the marketplace and instead chose to use its own proprietary index funds. *Id.* ¶ 90. Plaintiffs allege this decision contravened Principal's fiduciary duties because it was both imprudent and disloyal—the proprietary index funds "charged fees that were far higher than the fees charged by more competitive options," and the funds had larger tracking errors.[4] *Id.* ¶¶ 92–93.

---

require [insurance companies] to keep retirement contributions separate from other assets." *Leimkuehler v. Am. United Life Ins. Co.*, 713 F.3d 905, 908 (7th Cir. 2013).

[4] Tracking error measures how much an index fund has deviated from its benchmark index in the past. A tracking error is undesirable—whether it is positive (fund has better return than the benchmark) or negative (fund has a worse return than the benchmark)—because the objective of an index fund is to mirror its benchmark. [ECF No. 1 ¶ 55]. Plaintiffs allege "Principal's index funds have consistently had around the highest rates of tracking error among all index fund managers" and the "tracking error has been consistently negative." *Id.* ¶ 70. According to the Complaint, a negative tracking error is of particular concern to a prudent fiduciary because "chronically negative performance is worse than merely random performance" and the issues causing negative tracking error "tend to replicate over time, and thus are often predictive of future underperformance." *Id.* ¶ 55.

Plaintiffs single out the Principal Large Cap S&P 500 Index Fund ("Principal Large Cap Fund") as one of the imprudent investment choices retained by Principal. *Id.* ¶ 93. The Principal Large Cap Fund was offered as a standalone investment option but it significantly underperformed its benchmark index and competitor funds over an eight-year period. *Id.* ¶ 73; 74. Its underperformance included both a higher tracking error and significantly higher fees. *Id.* ¶ 73. Plaintiffs allege it was imprudent and disloyal for Principal to select and retain the Principal Large Cap Fund in the Separate Accounts when there were better performing index funds with lower fees available in the marketplace. *Id.* ¶ 93.

Similarly, Plaintiffs allege the Principal Bond Market Index Fund ("Principal Bond Fund"), benchmarked to the Bloomberg Barclays U.S. Aggregate Bond Index, was an imprudent investment choice. The Principal Bond Fund also lagged behind its benchmark index and competitors by a significant margin over a seven-year period. *Id.* ¶ 94. The Complaint identifies alternative bond funds which they allege would have been a more prudent choice. These funds—managed by competitors such as BlackRock, Northern Trust, State Street, and Vanguard—had a longer lifespan, more assets under management, and outperformed the Principal Bond Fund while charging significantly lower fees. *Id.* ¶¶ 95, 97.

Plaintiffs allege that Principal further breached its fiduciary duties by selecting more expensive versions of their proprietary investments to include in the Separate Accounts. *Id.* ¶ 100. Once a fiduciary chooses a specific vehicle in which to invest—such as mutual funds, exchange-traded funds, collective investment trusts ("CIT"), and annuity subaccounts—they must select a share class. *Id.* ¶ 65. Share classes offered by mutual funds, annuity subaccounts, and CITs are identical investments but are distinguished based on cost. *Id.* ¶ 67. More expensive share classes are available to smaller investors, whereas lower cost share classes are offered to large institutional

investors with more assets to invest. *Id*. ¶ 66. Plaintiffs contend that Principal chose mutual fund classes with annual fees between 0.94% and 1.02% even though "Principal offered lower cost, but otherwise identical, annuity subaccount versions of these funds," which charged annual fees of 0.64% and 0.77%. *Id*. ¶ 101. They also claim that Principal invested in a real estate mutual fund within the Separate Accounts rather than a CIT version of the exact same fund, which consisted of the same underlying investments and charged fees of only 0.64% per year. *Id*. ¶ 102. The Complaint maintains that Principal did not investigate and select the lowest-cost share class available for many of the investments included in the Separate Accounts. *Id*. ¶ 103. Principal is alleged to have been motivated to use higher-cost investments and share classes to earn more fees from the Plan, which inured to the benefit of Principal's mutual fund business and provided economies of scale for the company. *Id*. ¶ 106. According to Plaintiffs, Principal's conflicts of interest required it to carefully review and manage the Separate Accounts to ensure it was complying with its fiduciary duties and putting the interests of the Plan ahead of its own. *Id*. ¶ 107.

## II. STANDARD OF REVIEW

Rule 12(b)(6) provides for dismissal of a complaint if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To meet this standard, and thus survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard "is not akin to a

'probability requirement,'" it demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The facts alleged in the complaint 'must be enough to raise a right to relief above the speculative level.'" *Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009) (quoting *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009)). All reasonable inferences must be drawn in the plaintiffs' favor. *Crooks v. Lynch*, 557 F.3d 846, 848 (8th Cir. 2009).

### III. ANALYSIS

Plaintiffs bring one count[5] against Defendants, alleging they breached their fiduciary duties by failing to use a prudent and loyal process for selecting, monitoring, and reviewing investments offered by the Plan. [ECF No. 1 ¶¶ 118–27]. Plaintiffs' advance two primary claims: (1) Principal retained proprietary index funds in the Separate Accounts that were more expensive and performed more poorly than marketplace alternatives; (2) Even among their proprietary index funds, Principal selected versions of mutual funds that charged a higher fee than other options such as separate accounts or collective investment trusts. [ECF No. 1 ¶¶ 73–75; 93–95; 100–07]. Plaintiffs allege that Principal used share classes of some funds that were more expensive than other share classes contained in the same fund. *Id.* ¶ 103.

Defendants move to dismiss the Complaint for failure to state a claim. They argue Plaintiffs have not pled that the total fee was excessive—the "material fee" under Circuit precedent; they assert they were not acting as fiduciaries when selecting the challenged funds; and they contend Plaintiffs do not have Article III standing to challenge most of the funds identified in the Complaint.

---

[5] The Complaint originally pled two counts; the second count was brought against CHS alleging a failure to monitor fiduciaries. As noted, Plaintiffs settled with CHS prior to transferring the case to this District.

Because the Court finds that Principal was not a fiduciary when selecting the funds, it does not reach the standing question.

### A. ERISA Generally

ERISA "is a 'comprehensive and reticulated statute,'" which is the product of a decade of congressional study of the Nation's private employee benefit system." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209 (2002) (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251 (1993)). The law was designed "to protect the interests of participants in these plans by establishing standards of conduct, responsibility, and obligations for fiduciaries." *Prudential Ins. Co. of Am. v. Nat'l Park Med. Ctr., Inc.*, 413 F.3d 897, 906–07 (8th Cir. 2005) (quoting *Johnston v. Paul Revere Life Ins. Co.*, 241 F.3d 623, 628 (8th Cir. 2001)).

### B. Fiduciary Duty

ERISA defines a fiduciary as:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title.

29 U.S.C. § 1002(21)(A). When examining whether an individual is a fiduciary under the statute, the term fiduciary "is to be broadly construed." *Olson v. E.F. Hutton & Co.*, 957 F.2d 622, 625 (8th Cir. 1992) (citation omitted). A fiduciary can be a person exercising the discretion authority described in 29 U.S.C. § 1002(21)(A)(i) or "persons 'named' as fiduciaries in the plan instrument or 'identified' as such by an employer or employee organization." *Anoka Orthopaedic Assocs., P.A.*

*v. Lechner*, 910 F.2d 514, 517 n.5 (8th Cir. 1990) (quoting 29 U.S.C. § 1102(a)(2)). "The existence of a fiduciary relationship under ERISA . . . is a mixed question of law and fact." *Kramer v. Smith Barney*, 80 F.3d 1080, 1083 n.2 (5th Cir. 1996). "[D]iscretion is the benchmark for fiduciary status under ERISA." *Maniace v. Com. Bank of Kansas City, N.A.*, 40 F.3d 264, 267 (8th Cir. 1994). "Under ERISA, a person or entity may be explicitly named a fiduciary or may be deemed one based on the functional authority held by the same." *Delker v. Mastercard Int'l, Inc.*, 21 F.4th 1019, 1025 (8th Cir. 2022).

"[F]iduciary status under § 1002(21)(A) is not an all or nothing concept . . . . [A] court must ask whether a person is a fiduciary with respect to the particular activity in question." *Id*. (alterations in original) (quotations omitted). Thus, "a person may be an ERISA fiduciary with respect to certain matters but not others, for he has that status only 'to the extent' that he has or exercises the described authority or responsibility." *F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1259 (2d Cir. 1987); *see Am. Fed'n of Unions Local 102 Health & Welfare Fund v. Equitable Life Assurance Soc'y of the United States*, 841 F.2d 658, 662 (5th Cir. 1988) ("A person is a fiduciary only with respect to those portions of a plan over which he exercises discretionary authority or control."). This is consistent with the United States Supreme Court's admonishment that "[i]n every case charging breach of ERISA fiduciary duty . . . the threshold question is . . . whether that person was acting as a fiduciary . . . when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). Thus, "one who is an ERISA fiduciary only be reason of § 1002(21)(A) is liable only 'to the extent' he exercises discretionary control, renders investment advice, or has discretionary administration responsibility." *Martin v. Feilen*, 965 F.2d 660, 669 (8th Cir. 1992).

Fiduciaries are required to adhere to "twin duties." *Braden*, 588 F.3d at 595. One is a duty of loyalty, defined as "discharg[ing] [its] duties with respect to a plan solely in the interest of the

participants and beneficiaries . . . ." *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018) (quoting 29 U.S.C. § 1104(a)(1)). Not only must a fiduciary be loyal to a plan's participants and beneficiaries, but the fiduciary must discharge its duties "with the care, skill, prudence, and diligence" that a prudent fiduciary would use in similarly situated matters. *Id.* (quoting 29 U.S.C. § 1104(a)(1)(B)). Establishing a breach of fiduciary duty under ERISA requires a plaintiff to show: (1) defendant was a fiduciary of the plan; (2) defendant was acting in a fiduciary capacity for the act complained of; and (3) defendant breached a fiduciary duty. *Delker*, 21 F.4th at 1025 (quoting *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 312 F. Supp. 2d 1165, 1175 (D. Minn. 2004)).

1. Reasonability of Fees and Performance of the Separate Accounts

Defendants stress that in order to bring a claim for excessive fees, Plaintiffs must challenge the total fee charged to the Plan, not the fees charged by any underlying investments. *See Meiners*, 898 F.3d at 823 n.5 (holding "[i]t is 'the total fee, not the internal, post-collection distribution of the fee' that is the material figure for assessing the reasonableness of a fee.") (quoting *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009)). Plaintiffs dispute that they must challenge the "total fee" charged to the Plan; rather, they argue it is permissible to challenge only the fees deriving from Principal's role as a fiduciary, such as when it selected and retained the underlying investments comprising the Separate Accounts. They add that Defendants' focus on the "total fee" language in *Meiners* is misleading because "[t]he claims here . . . deal with the choice of funds" within the Separate Accounts, which is relevant because "Principal directly manages" the underlying funds. [ECF No. 136 at 15]. This Court was asked to apply *Meiners* in a previous case and the analysis here would benefit from a brief discussion of that case.

9

In *Nelsen v. Principal Global Invs. Tr. Co.*, 362 F. Supp. 3d 627 (S.D. Iowa 2019) (*Nelsen I*), the defendant offered similar arguments in support of a motion to dismiss. The defendant insisted because the complaint did not allege the "total fee" for the challenged investments was excessive, the plaintiffs could not state a claim for breach of fiduciary duties. 362 F. Supp. 3d at 640–41. This Court found that *Meiners* and a related case, *Hecker*, presented distinct issues from *Nelsen*.

*Hecker* was inapposite on the total fee argument because its analysis of "the total fees was limited to its discussion of whether the plaintiffs were adequately informed" about compensation the trustee had received from the plan's mutual fund advisor. *Id*. at 640. Distinguishing *Meiners*, this Court determined that the plaintiffs in *Nelsen* "sufficiently alleged facts that show there were many comparable investment options in the marketplace" which cost less or performed better, whereas *Meiners* had found the plaintiff there had not pled comparable alternatives were available in the marketplace. *Id.* at 641. This led the Court to find the complaint in *Nelsen* stated a claim for breach of fiduciary duties based on excessive total fees, despite the absence of explicit pleadings to that effect, because the plaintiffs had pled "sixty to seventy percent of the Principal CITs funds were invested in Principal Index Funds, which had fees five to fifteen percent higher than marketplace alternatives." *Id.*

After the defendant filed a Rule 54(b) motion to reconsider, the Court reaffirmed its holding. Rejecting the defendant's argument that it had declined to apply *Meiners*, the Court explained, "viewing the allegations as a whole, the Court finds Plaintiffs sufficiently alleged that the overall fees were higher." *Nelsen v. Principal Global Invs. Tr. Co.*, Case No. 4:18-cv-00115-SMR-SBJ, 2019 WL 7496779, at *3 (S.D. Iowa Sept. 23, 2019) (*Nelsen II*).

Defendants insist that the inference made in *Nelsen* should not apply here. First, they argue Plaintiffs do not plead that the total fee should be extrapolated from the fees of the underlying

investments. Because the Complaint does not advance such a premise, Defendants claim Plaintiffs are not entitled to the inference. Additionally, Defendants claim that not enough assets were invested in the challenged underlying funds—35 to 50 percent here versus 60 to 70 percent in *Nelsen*—to serve as a proxy for the overall fee.

Contrary to Defendants' contentions, the Complaint does not fail to state a claim simply because it does not explicate Plaintiffs' theory that excessive fees in underlying investments may be aggregated to arrive at an inference of excessive overall fees. Defendants assert that granting that inference amounts to reinterpreting or adding claims to the Complaint. [ECF No. 133-1 at 11]. However, on a motion to dismiss, Plaintiffs are entitled to "plausible inference[s]" that can be drawn from the Complaint. *Davis v. Washington Univ. in St. Louis*, 960 F.3d 478, 483 (8th Cir. 2020); *cf. Webb v. Hiykel*, 713 F.2d 405, 407–08 (8th Cir. 1983) ("It is well settled that the 'theory of the pleadings' doctrine, under which a plaintiff must succeed on those theories that are pleaded or not at all, has been effectively abolished under the Federal Rules of Civil Procedure.").

As Plaintiffs point out, Principal directly manages the Separate Accounts. Their claims of imprudence and disloyalty are grounded on the fact that the proprietary index funds in the Separate Accounts charged fees higher than marketplace alternatives. The Complaint identifies specific Principal funds that charged fees ranging from three to fifteen times more than comparable investments. [ECF No. 1 ¶¶ 73; 76; 80; 95]. Nevertheless, Defendants insist that the logic of *Nelsen* cannot be applied here because the Plan invested fewer assets in the challenged funds than the disputed investments in *Nelsen*, so fees of the underlying investments are not an appropriate proxy for overall fees. Although a smaller percentage of assets may make excessive underlying fees a more tenuous proxy, it is not clear at this stage how much so. The lower bound of the funds challenged in *Nelsen* was 60 percent while the upper bound here is 50 percent. *See Nelsen*, 362 F.

Supp. 3d at 638. Not only does the Complaint allege that between one-third and one-half of the Plan's assets were invested in excessively costly index funds, but it also alleges the fees were between 3 and 15 *times* more expensive. These statistical inferences are "sufficient factual allegations to show that [they are] not merely engaged in a fishing expedition or strike suit." *Braden*, 588 F.3d at 598. Courts must "evaluate an ERISA complaint as a whole and 'not parse[] [it] piece by piece to determine whether each allegation, in isolation, is plausible.'" *Nelsen*, 362 F. Supp. 3d at 637–38 (quoting *Braden*, 588 F.3d at 594, 598). "A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Washington Univ.*, 960 F.3d 483–84 (quoting *Twombly*, 550 U.S. at 556). The Complaint alleges enough underlying investments had excessive fees to state a plausible claim.[6]

### 2. Duty to Lower Fees

The issue of whether Plaintiffs have stated a claim for excessive fees based on the underlying investments is distinct from whether Principal had a fiduciary duty to lower those fees. Defendants argue that Principal was not acting as a fiduciary when it set the fees charged by the Separate Accounts. It insists that it was engaged in an arm's length negotiation with the Plan's named fiduciary, CHS, when the fees were determined and agreed to by CHS. According to Defendants,

---

[6] Defendants assert that "[i]f a plausible challenge to a target date fund's 'total fee' existed any time any volume of underlying funds were challenged, the Eighth Circuit's holding in *Meiners* would be rendered a nullity." [ECF No. 133-1 at 12]. This assessment is overstated. Plaintiffs do not challenge "any volume of underlying funds" but challenge funds which held 35 to 50 percent of the Plan's assets. Interpretation of fiduciary duties under ERISA is "context specific." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014). Here the relevant context is not only the volume of funds challenged but how excessive the fees in those funds are alleged to have been. It is not implausible to infer that the Separate Accounts charged excessive overall fees when the challenged funds are alleged to have charged fees 300 to 1500 percent more than competitors funds available in the marketplace.

to allow a suit based on a previously agreed to fee structure would be illogical and contrary to case law.

Plaintiffs reject this argument from Defendants, asserting that Principal breached its fiduciary duties not during its contract negotiations with CHS, but by exercising its discretion as an investment fiduciary to maintain certain investments in the Separate Accounts after the contract was finalized. They point to language in the contract agreement where Principal "acknowledge[s] that we are a fiduciary for this exclusive purpose of managing the assets of such Separate Accounts within the meaning of ERISA." [ECF No. 133-6 at 25].

"To prevail on a claim of breach of fiduciary duty under ERISA, the plaintiff must make a prima facie showing that a defendant acted as a fiduciary, breached his fiduciary duties, and thereby caused a loss to the Plan." *Dormani v. Target Corp.*, 970 F.3d 910, 914 (8th Cir. 2020) (quoting *Usenko v. MEMC LLC*, 926 F.3d 468, 472 (8th Cir. 2019)). There is extensive case law finding that selection of investment options is a "product design" choice rather than a fiduciary function. *Leimkuehler*, 713 F.3d at 911–12 (describing the pre-contractual selection of investment options as "product-design decisions" but not actions of a functional fiduciary); *Rosen v. Prudential Ret. Ins. & Annuity Co.*, Civ. Action No. 3:15-cv-1839 (VAB), 2016 WL 7494320, at *6 (D. Conn. Dec. 6, 2016) (finding a defendant could not "be considered a fiduciary based on its initial selection of the available investment options for the Plan because this action was taken before the parties entered into a contractual relationship, and it was ultimately up to the plan sponsor . . . whether or not to engage the plan on the stated terms."). "When a person who has no relationship to an ERISA plan is negotiating a contract with that plan, he has no authority over or responsibility to the plan." *F.H. Krear*, 810 F.2d at 1259; *accord McCaffree Fin. Corp. v. Principal Life Ins. Co.*, 811 F.3d 998, 1003 (8th Cir. 2016) ("Up until it signed the agreement . . . [the plan sponsor] remained free to reject

its terms and contract . . . [the defendant] could not have maintained or exercised any 'authority' over the plan and thus could not have owed a fiduciary duty under ERISA."); *see also Renfro v. Unisys Corp.*, 671 F.3d 314, 324 (3d Cir. 2011) ("Fidelity owes no fiduciary duty with respect to the negotiation of its fee compensation . . . [it] was not yet a plan fiduciary at the time it negotiated the fee compensation.").

Principal is identified in the plan documents as an "investment manager," which Plaintiffs allege bestows a "functional fiduciary" status on them.[7] [ECF No. 1 ¶ 29]. Plaintiffs acknowledge that Principal had no fiduciary duties before entering into a contract with CHS but maintain that Principal still breached their fiduciary duties by failing to remove overly expensive investments after the contract negotiations. *See Tibble v. Edison Int'l,* 135 S. Ct. 1823, 1828 (2015) (holding the "duty to exercise prudence in selecting investments" includes a "continuing duty to monitor [plan] investments and remove imprudent ones."). They insist the Complaint shows a nexus between a fiduciary function (investment management) and the alleged breach (failure to properly manage the Separate Accounts and the underlying investments). [ECF No. 136 at 20].

Defendants respond that this argument has been rejected by courts previously, unless a plaintiff presents evidence that the fiduciary exercised any authority or control to increase its fees. *See Santomenno v. Transamerica Life Ins. Co.*, 883 F.3d 833, 839 n.5 (9th Cir. 2018). The United States Court of Appeals for the Eighth Circuit has held similarly. *McCaffree Fin. Corp.*, 811 F.3d at 1004 ("McCaffree does not allege that Principal that Principal exercised this authority or that any such exercise resulted in the allegedly excessive fees . . . McCaffree seeks to evade through this lawsuit precisely those fees to which the parties contractually agreed."). If an investment manager

---

[7] ERISA expressly provides that an investment manager is not a named fiduciary. *See* 29 U.S.C. § 1002(38) (an investment manager "means any fiduciary (other than a trustee or named fiduciary) . . . .").

could be sued for a breach of fiduciary duty for excessive fees to which it agreed *prior* to entering into a contract, then the investment manager would effectively be a fiduciary in the pre-contract negotiations. Plaintiffs make no allegation that Principal exercised its discretion post-contract, only that it failed to remove allegedly imprudent investments. *See Ed Miniat, Inc. v. Globe Life Ins. Grp., Inc.*, 805 F.2d 732, 737 (7th Cir. 1986) (holding that if a contract term "is bargained for at arm's length, adherence to that term is not a breach of fiduciary duty."). A party is a fiduciary "only as to the activities which bring the person within [ERISA's definition]." *Custer v. Sweeney*, 89 F.3d 1156, 1162 (4th Cir. 1996) (quoting *Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 61 (4th Cir. 1992)).

Principal was not acting as a fiduciary when it negotiated at arms-length with CHS. Under Plaintiffs' theory, Principal was violating its fiduciary duties immediately after the Plan's inception simply by retaining the investments agreed to by CHS. *See* [ECF Nos. 133-7; 133-8]. It is clear that Principal did not have a duty to lower fees and change the investments to which the plan sponsor, CHS, agreed. The Eighth Circuit and other Circuit courts have found that Principal did not have a fiduciary duty in this context. *See McCaffree*, 811 F.3d at 1003 ("Because Principal did not owe plan participants a fiduciary duty while negotiating the fee terms with McCaffree, Principal could not have breached any such duty merely by charging the fees described in the contract."); *Santomenno*, 883 F.3d at 838–39 (holding that it would be "absurd" to permit a party to sue after they "knowingly agreed to a fee structure."); *Renfro,* 671 F.3d at 324; *Hecker,* 556 F.3d at 583.

Plaintiffs object that these documents, the Service and Expense Agreement and Retirement Plan Fee Summary, are "extraneous to the Complaint." [ECF No. 136 at 17]. However, they certainly appear to be "embraced by the Complaint" as they pertain to investments expressly identified in the Complaint. Plaintiffs also do not question the authenticity of the documents and

the documents do not contradict the Complaint. *See Saterdalen v. Spencer*, 725 F.3d 838, 840–41 (8th Cir. 2013) ("[C]ourts generally may not consider materials outside the pleadings . . . [but] courts may consider some public records, materials that do not contract the complaint, or materials that are necessarily embraces by the pleadings."). Plaintiffs maintain that they "are not arguing that Principal breached any fiduciary duty through pre-contractual actions or negotiations, but rather through discretionary fiduciary decisions pertaining to what investments should be maintained in the [Separate Accounts] after entering into a contract." [ECF No. 136 at 18]. Principal did not violate any fiduciary duties by simply retaining specific investments that were expressly agreed to by the plan sponsor and fiduciary, CHS. This means Plaintiffs cannot state a claim for breach of fiduciary duty based on these investments.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is GRANTED. [ECF No. 133]. This case is DISMISSED.

IT IS SO ORDERED.

Dated this 28th day of March, 2022.

_____
STEPHANIE M. ROSE, CHIEF JUDGE
UNITED STATES DISTRICT COURT